UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TERI L. TIFFANY,

              Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

              Defendant.
_____/

Case No. 1:07-CV-1010

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Unum Life Insurance Company of America ("UNUM"). The Motion has been fully briefed and oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d).

For the reasons which follow, the Court will grant the Motion, but declare in *dicta* that UNUM has wrongly withheld premiums on insurance it did not issue from the Estate of Steven Ray Tiffany. UNUM should **voluntarily** repay those premiums lest it trade its role in legitimate commercial insurance for the ways of the thief and confidence man.

## BACKGROUND

Plaintiff's decedent Steven Ray Tiffany is a former truck driver for Genmar Transportation, Inc.[1] (Compl. ¶ 3.) During the employment, UNUM charged Tiffany premiums for a $150,000 supplemental life insurance policy, UNUM policy number 557680. (*Id.* at ¶¶ 4, 10-11.) Tiffany died on December 4, 2006. (*Id.*)

_____

[1]The employer was previously party to this suit (sued in Count III of the Complaint), but such claims were dismissed by recent Stipulation and Order. (*See* Dkt. No. 45.)

When UNUM declined to pay the death benefit to Tiffany's beneficiary–Plaintiff Teri L. Tiffany–she sued Defendants before the 28th Circuit Court for the County of Wexford, Michigan. (*Id.* at 1, 4.)  The suit was removed to this Court by Notice of Removal filed on October 9, 2007, premised on both federal question jurisdiction (pertaining to preemption defenses arising from the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*) and diversity jurisdiction.

Central to this suit is the provision of the insurance policy/plan requiring the insured to submit evidence of insurability to UNUM as a condition for the issuance of the insurance.  The plan/policy required the submission of "evidence of insurability" as a condition for the issuance of supplemental life coverage.  (Policy, at Employee-1.)  Plaintiff alleges in her Complaint that UNUM denied coverage due to the decedent's failure to submit required evidence to UNUM.  (Compl. ¶ 16.)  Plaintiff further alleges that UNUM's acceptance of premiums after the decedent's failure to submit the required evidence of insurability constituted a waiver of that condition of the insurance policy. (*Id.* at ¶¶ 17-20.)

Plaintiff's Complaint asserts two state law claims against UNUM:  Count I, for breach of contract (*id.* at ¶¶ 9-16); and, Count II, for waiver and estoppel (*id.* at ¶¶ 17-20).  Upon removal, a Rule 16 Scheduling Conference was held on November 14, 2007, which resulted in the issuance of a Case Management Order ("CMO") the following day.[2]  The CMO required, *inter alia*, that all motions to amend pleadings be filed on or before December 15, 2007.  (CMO 2.)  To date, no motion to amend has been properly filed.

---

[2]The reference is to Federal Rule of Civil Procedure 16.

2

## DISMISSAL STANDARDS

Under Rule 12(b)(6), the district court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (following *Conley*); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004) (same); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003) (same). The allegations must be construed in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

Rule 12 requires only a "short and plain statement of the claim" and not detailed allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). This standard is not empty, however. It requires more than the bare assertion of legal conclusions. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). A complaint need not anticipate defenses. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004). However, the complaint "'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (emphasis in original, quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The district court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

These same dismissal standards apply to the review of a Rule 12(c) motion requesting judgment on the pleadings. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007) (citing *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001)); *see also, e.g., Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991).

## LEGAL ANALYSIS

The question of the moment is whether Plaintiff's state law claims survive ERISA federal preemption. The parties have argued the point extensively in their papers, including the application of Sixth Circuit precedent.

The basic rules of federal preemption premised upon the Supremacy Clause of the United States Constitution were explained by the United States Supreme Court in its *Travelers* decision:

> Our past cases have recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law. *See Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 203-204, 1721-22, 75 L. Ed. 2d 752 (1983); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947). And yet, despite the variety of these opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. . . . Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, *see Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 719, 105 S. Ct. 2371, 2378, 85 L. Ed. 2d 714 (1985), we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice, supra,* at 230, 67 S. Ct., at 1152. . . .

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995).

ERISA, as it happens, does contain express preemption language directing preemption of certain state law claims. Section 514 of ERISA, as amended, provides in pertinent part:

4

> Except as provided in subsection (b) of this section, the provisions of this subchapter
> and subchapter III of this chapter shall supersede any and all State laws insofar as
> they may now or hereafter relate to any employee benefit plan described in section
> 1003(a) of this title and not exempt under section 1003(b) of this title. This section
> shall take effect on January 1, 1975.

29 U.S.C. § 1144(a). The "except"/savings clause generally refers to the fact that state insurance,

banking and securities regulation, including, for example, laws governing insurance reserves, are not

preempted *See* 29 U.S.C. § 1144((b)(2)(A), (b)(6)(A). Also exempt from preemption are state tax

laws. *See* 29 U.S.C. § 1144(b)(5)(B).

Section 514's preemption clause was interpreted by Justice O'Connor in *Pilot Life Ins. Co.*

*v. Dedeaux,* 481 U.S. 41, 45-46 (1987), as "deliberately expansive, and designed to establish pension

plan regulation as exclusively a federal concern." Consistent with the *Pilot* decision, the Sixth

Circuit later held in *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.

1991), that state causes of action for breach of contract, promissory estoppel, negligence, and breach

of good faith were preempted by section 514. The broad statement of the ERISA preemption rule

in *Cromwell* was more recently followed by the Circuit in *Hutchison v. Fifth Third Bancorp.*, 469

F.3d 583, 587-89 (6th Cir. 2006), and continues to represent the precedent of this Circuit as to the

breadth of the preemption clause. The *Hutchison* ruling relied not only on the *Pilot* decision, but the

more recent statement of the ERISA preemption rule in *Aetna Health Inc. v. Davila*, 542 U.S. 200,

210 (2004). In *Davila*, the rule was expressed as follows:

> It follows that if an individual brings suit complaining of a denial of coverage for
> medical care, where the individual is entitled to such coverage only because of the
> terms of an ERISA-regulated employee benefit plan, and where no legal duty (state
> or federal) independent of ERISA or the plan terms is violated, then the suit falls
> "within the scope of" ERISA § 502(a)(1)(B). . . .   In other words, if an individual,
> at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and
> where there is no other independent legal duty that is implicated by a defendant's

actions, then the individual's cause of action is completely pre-empted by ERISA §
502(a)(1)(B).

*Id.*   While the plaintiffs complained in *Davila* that the denial of coverage violated independent legal

duties (relating to the standard of care for medical treatment) under state law regulating insurance,

this argument was rejected because the duties were dependent upon the plan-created benefits.  *Id.*

at 212-13.  It was further rejected because the creation of state remedies were deemed to be at odds

with ERISA's regulatory scheme.  *Id.* at 220.  *See also Hutchison*, 469 F.3d at 587-89 (following

*Davila*).

It is useful at this juncture to contrast the *Davila* decision, which did preempt state law, with

the Supreme Court's decision in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003),

which said that a state law prohibiting discrimination against "All Willing Provider[s]" ("AWP")

was saved from preemption because it regulated the insurance industry.  In saying so, the Supreme

Court reached the following conclusions.  First, the AWP law regulated insurance (within the

meaning of the section 514 savings provision) even though it applied more broadly than just to the

state insurance industry.  *Id.* at 335-36.  Second, insurance regulation law within the savings clause

relates not only to laws mandating the kinds of policies which can be sold (which were determined

saved from preemption by the Supreme Court's earlier determination in *Metropolitan Life Ins. Co.*

*v. Massachusetts*, 471 U.S. 724, 740 (1985)), but also to laws directed to other entities and persons

(such as health care providers).  *Id.* at 337-38.  Third, the Kentucky AWP law substantially affected

risk pooling arrangements by mandating acceptance of AWPs, and this substantial effect on risk-

pooling brought the provision within the savings clause as a regulation of insurance.  *Id.* at 338-39.

In saying so, the *Miller* Court borrowed from its previous decision in *Pilot Life Ins.,* 481 U.S. at 48-

49 (1987), which understood that practices which had the effect of transferring risk were part of the "business of insurance."

In this instance, Plaintiff argues that the breach of contract claim is not preempted because it arises from a Michigan statute which makes a life insurance policy uncontestable at any time after two years from its date of issuance when premiums have been accepted as payment on the policy. *See* Mich. Comp. Laws § 500.4432.  While this is a righteous statute which seeks a righteous result in accordance with state law, it is equally clear that the duty to provide the insurance benefit itself is not independent of the benefit plan relating to supplemental life insurance.  As such, the state law claims relating to this dependent duty (as opposed to a claim brought under section 502(a)(1)(B) to recover benefits or a claim for equitable relief under section 502(a)(3) ) are preempted by ERISA.

One claim which is not preempted by ERISA is the one which Plaintiff seeks to amend its Complaint to assert–a basic ERISA enforcement claim under section 502(a)(1)(B).  While such claim is not preempted, there are several reasons why amendment is not permitted on this record.  First, no proper motion to amend the Complaint has been filed.  While Plaintiff has requested amendment in her Opposition Brief (Br. 6-7), this request does not comply with Western District of Michigan Local Civil Rule 7.1(a) because no separate motion and supporting brief were filed as required by the Local Rule.  While Plaintiff's counsel did attach the proposed Amended Complaint to the Opposition Brief, the attachment does not cure the defect in failing to have properly moved for amendment pursuant to Federal Rule of Civil Procedure 15.  Furthermore, while amendment under Rule 15 is liberally granted in the normal course, in this case the improper request was made after the deadline of December 15, 2007 set in the CMO.  No basis constituting "excusable neglect" under Federal Rule of Civil Procedure 6(b) is given for the delay.  Indeed, the only explanation for the

7

delay is that "Plaintiff has to have an opportunity to find the law . . . ."  (*Id.*)  This is a peculiar

explanation, though, given that the first Motion to Dismiss discussing the preemption issue (filed

by Genmar Transportation, Inc.) was filed on November 28, 2007–significantly before the deadline.

It is also peculiar from the standpoint of Federal Rule of Civil Procedure 11, which Rule requires

that counsel investigate the basis for claims prior to filing.   While this Court is happy to educate

counsel through its Opinions and Judgments, such belated education is not an exception to Rule 11's

requirements, nor is it a basis for finding excusable neglect under Rule 6(b)(2).  *See FHC Equities,*

*L.L.C. v. MBL Life Assur. Corp.*, 188 F.3d 678, 685 (6th Cir. 1999) (holding that ignorance of the

law does not constitute excusable neglect); *Engleson v. Burlington Northern R.R. Co.,* 972 F.2d

1038, 1044 (9th Cir. 1992) (same).

       Finally, even were the Court to find excusable neglect, it would not permit the amendment

because such amendment is futile in light of the Sixth Circuit's decision in *Turney v. Safeco Life Ins.*

*Co.*, 17 F.3d 141, 145 (6th Cir. 1994).  *Turner* rejected an identical claim for a death benefit arising

from a state incontestability statute because the plan language and federal law were deemed to

control the right to benefits.  While the Court is not happy to apply that precedent, it is the law of the

Sixth Circuit.  Accordingly, the proposed Amended Complaint will not be entertained.

       Having so ruled, the Court is nevertheless concerned about one grave injustice which the

operation of the state statute (Mich. Comp. Laws § 500.4432) would have avoided.  Namely, by both

resisting the claim for benefits because the decedent was uninsurable and receiving benefits on the

supplemental policy for a three-year period (*see* Pl.'s Admin. Review Br. 5), UNUM has put itself

into the position of receiving premium payments for a risk it was unwilling to insure while keeping

the premiums.  While this is a nice piece of business for UNUM's stockholders, at the bottom it is a kind of commercial theft which just courts cannot countenance.

The District of Massachusetts was faced with a like situation in *Dreznin v. Reliance Standard Life Ins. Co.*, 350 F. Supp. 2d 308 (D. Mass. 2004):

> Even if it was proper to deny benefits to Plaintiff, he may have a claim for restitution under ERISA.  *Mertens v. Hewitt Associates,* 508 U.S. 248, 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) (holding that the "equitable relief" available under ERISA includes restitution).  Here, decedent paid four months of premiums but was denied coverage and the record before the Court is unclear as to reimbursement. In the unlikely event that the premiums were not refunded, Plaintiff would have a claim to recover them.

*Id.* at 314.

Of course, the reimbursement of the three-years of premium payments is due to the Estate of Steven Ray Tiffany, which entity is not a party to this suit, nor was a claim for reimbursement filed by the Estate.  While the Court cannot award reimbursement in this posture, it does urge UNUM by this *dicta* to refund those premiums.  If it fails to do so, the premiums will be a small price for its reputation as a commercial insurer that actually undertakes risks on premiums it accepts.

## **CONCLUSION**

For the reasons given, Judgment on the Pleadings will be granted to UNUM, dismissing the state law claims as preempted by federal law.

  /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:          RICHARD ALAN ENSLEN
    February 12, 2008            SENIOR UNITED STATES DISTRICT JUDGE

9